* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and it has jurisdiction over the parties and the subject matter.
2. The date of plaintiff's injury is January 30, 2003.
3. Phoenix Insurance Company provided workers' compensation coverage to defendant-employer on January 30, 2003. Travelers has acted as a Third-Party Administrator.
4. Defendants filed a Form 60 dated July 18, 2003, with an acceptance of plaintiff's low back claim as compensable.
5. Plaintiff has received wage benefits at a compensation rate of $302.55 since April 3, 2003.
6. There is disagreement as to the nature of the plaintiff's injury and the extent of any disability related to the injury by accident.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years of age. He had finished the tenth grade and obtained a high school equivalency certificate by passing the General Educational Development Test ("GED"). Plaintiff also studied repair of airframe sheet metal at the Baker School of Aeronautics in Tennessee, and was certified in airframe maintenance and repair, as well as hydraulic maintenance in 2000. Plaintiff worked for Triangle International Maintenance ("TIMCO") from 2000 to June 2002, at which time he began contracting his labor.
2. Defendant-employer is an employment placement agency through which plaintiff secured work at Thomas Built Buses on January 28, 2003. Two days later, on or about January 30, 2003, plaintiff sustained an injury to his back, which is the subject of this claim. While plaintiff was picking up and stacking steel plates, plaintiff felt a "kink" and pain in his back.
3. Plaintiff presented to High Point Regional Medical Center on January 31, 2003, with complaints of low back pain with leg spasms. Plaintiff was diagnosed with a low back strain and degenerative joint disease in the spine.
4. Plaintiff presented to Dr. Stephen Miller at U.S. Healthworks, who diagnosed plaintiff with a lumbar strain on March 13, 2003.
5. On March 27, 2003, plaintiff presented to Dr. Ronald Gioffre, an orthopedic surgeon, who prescribed Mepergan Fortis for pain. As set forth in pre-injury medical records, including records from Dr. Edward Hill, which were received as evidence, plaintiff had taken Mepergan on a regular basis in 2001. Dr. Gioffre also ordered a lumbar MRI, and released plaintiff from work pending review of the test results.
6. On April 23, 2003, Dr. Gioffre reviewed the MRI, which he interpreted as revealing mild spinal stenosis with some lateral recess stenosis. In medical records dated April 23, 2003, Dr. Gioffre's opined that plaintiff "certainly did not need surgery." Further, Dr. Gioffre opined that plaintiff's spinal stenosis was a pre-existing condition, not the result of his work injury, and was not significantly aggravated by his injury. Dr. Gioffre further noted that plaintiff's pain complaints were right-sided while the stenosis was on the left.
7. Dr. Gioffre opined that plaintiff did not need surgical intervention for his work-related injury because there were no objective findings consistent with plaintiff's subjective complaints to support an assessment that surgery would relieve his problems.
8. On May 28, 2003, plaintiff presented to Dr. Carmen Dohmeier, a neurologist, with complaints of a single seizure event occurring on May 8, 2003. Plaintiff advised Dr. Dohmeier that he could not remember the exact circumstances or events of the alleged seizure episode. Dr. Dohmeier testified that chronic pain or the effects of chronic pain were not likely to contribute to a lower threshold activity for seizures.
9. There is no medical evidence that plaintiff was taking Mepergan Fortis at the time of the alleged seizure activity. Even if plaintiff were taking Mepergan Fortis, he had a pre-injury history of taking this medication with no adverse effect. Further, Dr. Dohmeier was unable to state that this medication caused the seizure-like activity, or that this seizure episode was related to the injury at work on January 30, 2003.
10. On July 16, 2003, plaintiff underwent a functional capacity evaluation ("FCE") at Healthsouth. The therapist who administered the evaluation opined that plaintiff might have given sub maximal effort. Plaintiff was deemed capable of walking, standing, pushing and pulling up to fifty pounds and overhead and forward reaching and carrying up to 10 pounds.
11. On or about July 25, 2003, Dr. Stephen Miller of US Healthworks reviewed the FCE results. Dr. Miller assessed plaintiff with chronic low back pain, and at maximum medical improvement with a ten percent permanent impairment with the capacity to perform sedentary work. Dr. Miller released plaintiff from his care and referred him to Dr. Hans Hansen of the Pain Relief Clinic.
12. On October 22, 2003, plaintiff presented to Dr. Hans Hansen, who noted that plaintiff displayed high levels of pain behavior, with four of five positive Waddell's Signs. Dr. Hansen did not believe plaintiff was a surgical candidate and further noted that he did not find him disabled.
13. At his November 4, 2003, return visit to Dr. Hansen, plaintiff exhibited inappropriate pain behavior, Dr. Hansen noted positive Waddell's Signs, and that "His pain behavior is out of proportion to overall physical findings." Dr. Hansen found that plaintiff was at maximum medical improvement and that he had nothing further to offer him. Dr. Hansen suggested that plaintiff practice cigarette cessation, home-based therapy, weight control, use non-narcotic pain medication, and follow-up with his primary care physician.
14. In a letter to the insurance carrier dated January 20, 2004, Dr. Hansen restated his impression that plaintiff was "essentially at maximum medical improvement" and that he concurred with the other physicians' permanent impairment ratings.
15. On January 29, 2004, plaintiff's counsel referred him to Dr. Craig Derian, an orthopedic surgeon, for a second opinion. A repeat MRI was performed on March 19, 2004, that revealed congenital abnormalities and degenerative changes. These diagnoses pre-existed plaintiff's work injury and were not the result of trauma.
16. Dr. Derian acknowledged that plaintiff had pre-existing spinal stenosis, as assessed by Dr. Gioffre but opined that plaintiff's pre-existing condition was aggravated by his injury at work. Dr. Derian opined that plaintiff might benefit from a spinal decompression.
17. Dr. Gioffre testified that the underlying degenerative and congenital conditions seen on plaintiff's lumbar MRI were not aggravated by plaintiff's injury at work. Dr. Gioffre testified that the surgery recommended by Dr. Derian would not be related to the original injury at work.
18. The testimony of these two physicians is weighed in light of the opinions rendered by other physicians who have examined plaintiff, as well as plaintiff's medical history. After consideration of plaintiff's exaggerated pain behaviors and the opinions of Drs. Miller and Hansen that plaintiff was not disabled, the Full Commission gives greater weight to the opinion of Dr. Gioffre, which is consistent with the assessments of Dr. Hansen and Dr. Miller, than to that of Dr. Derian. Dr. Derian's opinion is based more upon plaintiff's subjective pain complaints than on objective evidence and fails to consider plaintiff's history of questionable pain behavior.
19. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff's injury by accident on January 30, 2003, did not significantly aggravate his pre-existing lower back condition, specifically his spinal stenosis. The surgery recommended by Dr. Derian is not related to plaintiff's injury at work but rather related to pre-existing conditions, which had not been aggravated by the work injury.
20. On February 20, 2004, Dr. Hansen noted that plaintiff requested pain medication but he declined to prescribe it because he did not feel it was warranted. Dr. Hansen noted that his physical examination did not support plaintiff's claim for pain and that plaintiff was not a disability candidate and could safely return to light duty work.
21. On March 16, 2004, Dr. Hansen noted that plaintiff was "distractible, inappropriate to exam and nonphysiologic on many points of the exam." In addition, Dr. Hansen noted that plaintiff had a high level of pain behavior. Plaintiff refused to return to Dr. Hansen following the March 16, 2004, visit.
22. Plaintiff's pre-injury medical history is relevant in analysis of plaintiff's credibility with respect to his complaint that he is unable to work due to continued pain. Prior to his work injury, plaintiff was dismissed from multiple physicians due to abuse of prescription medication and lying about prescription medication.
23. Plaintiff has a long-standing pre-injury history of taking Xanax for anxiety and sleeplessness. At the hearing before the Deputy Commissioner, plaintiff denied suffering from anxiety, and also denied having prior problems with prescription pain medication. Plaintiff also denied suffering from sleeping problems during the five years he worked for TIMCO, from approximately 1997 to June 2002. These statements are inconsistent with the objective medical records and, as such, the Full Commission finds plaintiff's testimony not credible.
24. Lowry Hill, who was branch manager for defendant-employer at the time plaintiff was hired, testified at the hearing before the Deputy Commissioner. Ms. Hill, who was aware of plaintiff's work restrictions, testified that in September 2003, she placed some telephone calls to plaintiff because "we had a job available that was within his work restrictions." Based upon Ms. Hill's testimony, one of the jobs she wanted to offer to plaintiff was helping in a Goodwill Store. Another job was with a company called Xpedx where plaintiff would be packaging wrapping paper but not lifting more than five or six pounds. Although Dr. Miller had indicated that plaintiff could return to work as early as July 2003 following the FCE, it appears that this was defendant's first attempt to offer suitable employment to plaintiff.
25. Ms. Hill spoke with plaintiff's wife in September 2003 and asked her to have plaintiff return her call because she had a job to offer him. Although plaintiff was aware that defendants had contacted him to offer at least two separate jobs in September 2003, plaintiff never contacted defendants in response. Plaintiff offered no testimony to rebut defendants' evidence that the job duties offered were within his restrictions.
26. Following plaintiff's work injury, his treating physicians removed him from work until they could perform further tests, including the MRI and the FCE. Therefore, plaintiff was temporarily unable to earn wages in the same or any other employment from the date of the accident until Dr. Miller released him to return to work on or about July 25, 2003. However, the Full Commission finds that the employer did not make suitable employment available to plaintiff until September 2003.
27. The greater weight of the medical evidence indicates that by September 2003, plaintiff had reached maximum medical improvement, and had been released to return to work with restrictions by Dr. Miller. Shortly thereafter, Dr. Hansen also evaluated plaintiff and released him to return to work with restrictions. The Full Commission finds that the jobs defendants offered to plaintiff were suitable and within his work restrictions and that as early as September 2003, plaintiff was able to return to the suitable employment that defendants offered.
28. The Full Commission finds that plaintiff has reached maximum medical improvement with a ten percent permanent impairment to his lower back and is capable of returning to work within the restrictions outlined by his physicians.
29. The transcript for the hearing before the Deputy Commissioner was filed with the Industrial Commission on February 15, 2006. Plaintiff did not file an application for review until April 18, 2006, and its brief to the Full Commission was not filed until the day of the hearing before the Full Commission on June 19, 2006. Plaintiff's counsel did not appear at the hearing before the Full Commission.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about January 30, 2003, plaintiff sustained a back strain as a result of an injury by accident arising out of and in the course of employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. There must be competent evidence to support the inference that the accident in question resulted in the injury, i.e., some evidence that the accident at best might have or could have produced the particular disability in question. In the present case, the greater weight of the competent medical evidence reveals that plaintiff's spinal stenosis was a pre-existing condition, neither the result of his work injury nor aggravated by it. Click v. Pilot Freight Carrier, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
3. As a result of plaintiff's injury on January 30, 2003, he is entitled to temporary total disability at a weekly rate of $302.55 beginning January 31, 2003, and continuing through September 30, 2003, when defendants offered plaintiff suitable employment and he had been released to return to work by his physicians. N.C. Gen. Stat. § 97-29.
4. When an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation during the continuance of such refusal, unless in the opinion of the Industrial Commission, such refusal was justified. In the present case, plaintiff's refusal to contact defendant-employer in response to messages offering him work amounts to a constructive refusal of suitable employment. Therefore, defendants may suspend payment of ongoing temporary total disability benefits as of October 1, 2003. N.C. Gen. Stat. § 97-32; Johnson v. Southern Tire Sales, 358 N.C. 701,599 S.E.2d 508 (2004).
5. The surgery recommended by Dr. Derian is not medically necessary to effect a cure or provide relief from plaintiff's work-related injury since this surgery is related to plaintiff's pre-existing back condition that was not aggravated by his work-related injury. N.C. Gen. Stat. §§ 97-19 and 97-25. Clickv. Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980); Dean v. Carolina Coach Co., 287 N.C. 515, 215 S.E.2d 89
(1975).
6. Plaintiff has reached maximum medical improvement with a ten percent permanent impairment to his back for which he is entitled to compensation for thirty weeks. N.C. Gen. Stat. § 97-31(23).
7. Defendants are entitled to a credit for temporary total disability compensation benefits paid to plaintiff after September 30, 2003, against the permanent partial disability compensation. N.C. Gen. Stat. § 97-42.
8. N.C. Gen. Stat. § 97-80(a) gives the North Carolina Industrial Commission the power to make rules consistent with the Workers' Compensation Act for carrying out its provisions. Rule 701(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission requires that an appellant's Form 44 (Application for Review) and brief be filed and served within 25 days of appellant's receipt of the transcript.
9. Upon failure to comply with the Rules of the Industrial Commission or failure to timely file forms as required by the Rules or Statutes, the Industrial Commission may subject the violator to fines, attorney fees or other appropriate sanctions. Rule 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional medical treatment is denied. As the medical evidence fails to establish that plaintiff's work injury significantly aggravated his pre-existing back condition, specifically his spinal stenosis, the surgery recommended by Dr. Derian is denied. Plaintiff's request to change his treating physician to Dr. Derian is also denied.
2. Plaintiff's claim for compensation related to the May 8, 2003 seizure like episode has been abandoned.
3. Plaintiff is not entitled to any further temporary total disability benefits after September 30, 2003, based upon his refusal of suitable employment.
4. Defendants shall pay plaintiff compensation for his ten percent permanent impairment rating to his back.
5. Defendants are entitled to a credit for temporary total disability compensation benefits paid to plaintiff after September 30, 2003, against the permanent partial disability compensation.
6. For failure to comply with Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, plaintiff's counsel is hereby sanctioned in the amount of $250.00 pursuant to Rule 802 of the Workers' Compensation Rules and Rule 37 of the North Carolina Rules of Civil Procedure.
7. Defendants shall pay the costs.
This the __ day of July 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER